IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CARTEL ASSET MANAGEMENT, INC., a Colorado corporation,<br><br>   Plaintiff,<br><br>      v.<br><br>ALTISOURCE PORTFOLIO SOLUTIONS, S. A. a corporation chartered under the laws of the Grand Duchy of Luxembourg, et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:11-CV-2612-TWT |

ORDER

This is an action for misappropriation of trade secrets. It is before the Court on Defendant Altisource Portfolio Solutions, S.A.'s ("APS") Motion to Dismiss [Doc. 20] pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(5) for improper service of process, the Plaintiff's Motion to Permit Jurisdictional Discovery Related to APS' Motion to Dismiss [Doc. 31], and the Plaintiff's Motion to Strike Declarations Submitted by APS in Support of its Reply Brief [Doc. 35]. For the reasons set forth below, the Court DENIES the Defendant APS' Motion to Dismiss [Doc. 20], GRANTS the Plaintiff's Motion to Permit Jurisdictional Discovery [Doc. 31], and DENIES the Plaintiff's Motion to Strike [Doc.

35]. The Motion to Dismiss filed on August 31, 2011, by Altisource Portfolio Solutions, Inc., Altisource Solutions, Inc., Altisource US Data, Inc., and Altisource Valuation Advisors, Inc. [Doc. 10], is also DENIED as moot.

I. Background

The Plaintiff, Cartel Asset Management, Inc. ("CAM") developed a trade secret (the "Trade Secret")–a confidential list of experienced, responsive and competent Realtors who produce high-quality broker price opinions ("BPOs") at acceptable prices. (Am. Compl. ¶ 10.) In 2000, Ocwen Federal Bank, which was a large customer of CAM, began to secretly copy the names and contact information of Realtors identified on BPOs that it purchased from CAM. (Am. Compl. ¶ 13.) Ocwen Federal then embedded the stolen information into its own incomplete database of BPO providers. (Am. Compl. ¶¶ 13-14.) As a result, Ocwen Federal had Realtors in its BPO database (the "Database") that were identified as a direct result of the theft of the Trade Secret, and was further able to find additional Realtors via referrals from the original Realtors ("Derivative Brokers"). (Id.) CAM sued Ocwen Federal and its affiliates for theft of the Trade Secret under the Colorado Uniform Trade Secrets Act ("CUTA") in the United States District Court for the District of Colorado. (Am. Compl. ¶ 30.) In 2004, a jury awarded CAM compensatory and punitive damages. (Am. Compl. ¶ 31.) While the judgment was on appeal, Ocwen Financial Corporation

("OFC") dissolved Ocwen Federal and transferred the Database to its wholly-owned subsidiary, Ocwen Loan Servicing, LLC ("OLS"). (Am. Compl. ¶¶ 15-16.) OLS continued to use and profit from CAM's Trade Secret and was added as a defendant after the Tenth Circuit remanded for a new trial on damages. (Am. Compl. ¶ 33.) In September 2010, a jury returned a verdict in CAM's favor for more than $12.72 million in compensatory and punitive damages based on the theft of the Trade Secret. (Am. Compl. ¶¶ 33, 35.) This jury verdict covered the period until August 10, 2009. On August 10, 2009, OFC transferred the BPO product line and the Database to APS. (Am. Compl. ¶¶ 17, 28, 35-37.) CAM alleges that APS has four wholly-owned subsidiaries (Altisource Portfolio Solutions, Inc., Altisource Solutions, Inc., Altisource US Data, Inc., and Altisource Valuation Advisors, Inc.) (collectively "Subsidiary Defendants") through which APS provides its BPO services. (Am. Compl. ¶¶ 26-28.) The Subsidiary Defendants maintain their principal place of business at 2002 Summit Boulevard, Suite 600, Atlanta, Georgia 30319 (Am. Compl. ¶¶ 3-6.) APS is a corporation chartered under the laws of the Grand Duchy of Luxembourg which maintains its principal place of business within the Grand Duchy of Luxembourg. (Am. Compl. ¶ 2.)

CAM filed a Complaint in this Court on August 8, 2011, asserting that APS and its subsidiaries misappropriated its Trade Secret [Doc. 1]. It amended the Complaint

on September 14, 2011 [Doc. 16]. The Subsidiary Defendants and APS filed Motions to Dismiss [Docs. 20 & 21]. APS' Motion to Dismiss [Doc. 20] asks the Court to dismiss the Plaintiff's CUTA claim against it on the grounds that this Court does not have personal jurisdiction over APS and that service of process was improper.

II. Motion to Dismiss Standard for Personal Jurisdiction and Service of Process

The plaintiff bears the burden of establishing a court's personal jurisdiction over the defendant. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). At a hearing or trial, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998). A court may, however, make a preliminary finding based solely on the pleadings whether personal jurisdiction exists. In such case, the "plaintiff must establish a *prima facie* case of jurisdiction to survive the motion to dismiss." Railcar, Ltd. v. Southern Ill. Railcar Co., 42 F. Supp. 2d 1369, 1371 (N.D. Ga. 1999). The reviewing court construes the allegations in the complaint as true to the extent that they are uncontroverted by the defendant. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Where there are conflicts between the parties' pleadings, on a motion to dismiss for lack of personal jurisdiction or insufficient service of process, all reasonable inferences are drawn in favor of the plaintiff. Id.; see also Whitney Information Network, Inc. v. Xcentric Ventures, LLC, 199 Fed. Appx. 738,

741 (11th Cir. 2006) ("When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, we must construe all reasonable inferences in favor of the plaintiff."); Exceptional Mktg. Group, Inc. v. Jones, 749 F. Supp. 2d 1352, 1361 n.2 (N.D. Ga. 2010) (when there is a conflict in the parties' evidence related to a motion to dismiss "the Court resolves conflicts in the evidence in favor of the party asserting jurisdiction"); Brand v. Mazda Motor of Am., Inc., 920 F. Supp. 1169 (D. Kan. 1996) (applying the same standard to a motion to dismiss for insufficient service of process). Evidence that a plaintiff can use to contradict a defendant's declaration includes press releases, statements on websites and government filings. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002). A court's preliminary ruling on the issue, however, is not necessarily the last word. Dean, 134 F.3d at 1272. The defendant can also raise its jurisdictional arguments in a later hearing or at trial. Id.

### III. Discussion

#### A. Motion to Strike

The Plaintiff has moved to strike the declarations filed in support of APS' Reply Brief in Support of APS' Motion to Dismiss. CAM argues that it is unfairly prejudiced because it cannot respond to the Defendant's reply declarations. The Federal Rules of Civil Procedure provide that "[w]hen a motion is supported by

affidavit, the affidavit shall be served with the motion . . ." Fed. R. Civ. P. 6(d). Further, according to the Local Rules for the Northern District of Georgia, "[e]very motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority. If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law." L.R. 7.1A(1), ND Ga. The court considers reply affidavits only for the "limited purpose of responding to matters raised in the responses filed by the opposing parties." Tishcon Corp. v. Soundview Commc'ns, Inc., No. 04-CV-524, 2005 WL 6038743, at *8 (N.D. Ga. Feb. 15, 2005); see also Lewis v. Zilog, Inc., 908 F. Supp. 931, 959 (N.D. Ga. 1995).

APS' Motion to Dismiss and supporting affidavit from its CEO state that APS does not transact business in Georgia. The Plaintiff introduces evidence in its Response and supporting exhibits that seeks to demonstrate that APS does transact business in Georgia. This evidence includes (but is not limited to) both public filings and William Shepro's (APS' CEO) employment contract stating that Shepro lives in Atlanta, the LinkedIn website profiles of several persons claiming to work for APS in a senior management position (including Shepro) stating that they reside in Atlanta, and evidence that APS has an office at 2002 Summit Boulevard, Suite 600, Atlanta, Georgia 30319 (public filings list Shepro, the CFO, and chief administrative officer and general counsel at that address). APS' affidavits supporting its Reply Brief

respond directly to the Plaintiff's evidence. APS replies with a second affidavit from Shepro, which states that he moved from Georgia to Luxembourg in August 2009 (Shepro Second Aff. ¶ 9), that his employment contract was drafted prior to the move (id. at ¶ 11), and that his LinkedIn website profile was not updated to reflect this move. (Id. at ¶ 7.) Shepro further states that the other LinkedIn profiles cited by the Plaintiff incorrectly identify these individuals as employees of APS. (Id. at ¶ 10.) APS also replies with an affidavit from Dan McMahon, an executive at CT Corporation System. McMahon swears that the public filings referenced by the Plaintiff in its Response were incorrectly completed by CT; he states that APS had furnished CT with information that Shepro, the CFO, and the chief administrative officer and general counsel were located in Luxembourg and that CT filed annual reports stating that they resided in Georgia in error. (McMahon Aff. ¶¶ 4-7).

The Plaintiff argues that because APS broached the issue of personal jurisdiction, APS should have addressed this evidence in affidavits attached to its Motion to Dismiss because the additions in APS' Reply Brief ultimately support the same conclusion that APS is not subject to personal jurisdiction in Georgia. The Court disagrees; whether or not the Plaintiff could find certain evidence by performing "a Google search," the Court does not believe that the Defendant should have had to predict which evidence the Plaintiff would present and preemptively rebut it in

affidavits attached to its Motion to Dismiss.

B. <u>Personal Jurisdiction</u>

The Court is not persuaded that the type of evidence that the Plaintiff presents in favor of general jurisdiction which was discussed above (public filings, websites, SEC filings, etc.) creates even a "reasonable inference" that APS itself transacts business in Georgia in light of the challenge from APS' sworn affidavits. The affidavits directly refute the claim that APS is itself transacting business in Georgia. The Court next considers whether CAM has made a *prima facie* case that APS is subject to personal jurisdiction in Georgia through its subsidiaries.

The Plaintiff has presented a *prima facie* case that this Court has both specific and general personal jurisdiction over the Defendant, satisfying the Georgia Long Arm Statute and Constitutional Due Process. The Plaintiff has presented evidence that APS has "continuous and systematic contacts" with Georgia through its subsidiaries, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984), and that APS misappropriated the Trade Secret to its subsidiaries in Georgia and continues "through its subsidiaries" to use the Trade Secret in Georgia. (Am. Compl. ¶ 26.)

For the Court to exercise personal jurisdiction, the Georgia Long Arm Statute and Constitutional Due Process must be satisfied. The Long Arm Statute is satisfied here because there is evidence that APS "transacts business within [Georgia],"

O.C.G.A. § 9-10-91(1) ("Subsection 1"), and "commit[ted] a tortious act or omission within this state." O.C.G.A. § 9-10-91(2) ("Subsection 2"). Subsection 1 "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this state...to the maximum extent permitted by procedural due process." Diamond Crystal Brands, Inc. v. Food Movers Int'l, 593 F.3d 1249, 1261 (11th Cir. 2010). CAM presents evidence that APS transacts business in Georgia by providing its BPO services through its Georgia subsidiaries.[1] (Am. Compl. ¶ 26.) Georgia law allows the exercise of personal jurisdiction over a parent company that does business through one or more subsidiaries in Georgia. Mitsubishi Motors Corp. v. Colemon, 290 Ga. App. 86 (2008); see generally Meier, 288 F.3d at 1273 ("Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.").

Subsection 2 is also satisfied (although only one subsection need be satisfied) because CAM alleges that APS engaged in tortious acts within Georgia through its subsidiaries. Again, CAM alleges that APS transferred the Database to its subsidiaries in Georgia so that APS could provide BPO services "through its subsidiaries." (Am. Compl. ¶ 26.) For purposes of Subsection 2, a tortious act occurs either where the

---

[1] APS does not contest this assertion.

"act or omission was made...or where the damage was sustained." Exceptional Mktg., 749 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010). Under CUTA, the transfer of the Trade Secret to APS' subsidiaries was a tortious act of misappropriation because Colorado law defines not only the use of a trade secret but also the "acquisition of a trade secret" as misappropriation. Colorado Rev. Stat. §§ 7-74-102(2)(a); 7-74-104(1). Moreover, CAM claims that APS continues to use the Trade Secret through its subsidiaries in Georgia.

The Court's personal jurisdiction over APS also does not offend due process. "Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction." Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002). The Plaintiff has made a *prima facie* case that APS is subject to both general and specific jurisdiction.

A defendant is subject to general jurisdiction only where it has "continuous and systematic contacts" with the forum state. Helicopteros, 466 U.S. at 416. If the defendant's contacts with the forum state satisfy this high threshold, it may be sued in that forum on any claim. Id. at 415-16. The Plaintiff presents APS' website and its Form 10-K for the Fiscal Year ending December 31, 2010, which state that APS provides its BPO services either "through its subsidiaries" or "together with its subsidiaries." (Am. Compl. ¶ 27.) Although a foreign corporation is not subject to

jurisdiction in Georgia merely because a subsidiary is doing business in Georgia, Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (2000), "if the subsidiary is merely an agent through which the parent company conducts business in [Georgia]...then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in [Georgia] through the subsidiary for purposes of asserting personal jurisdiction." Meier, 288 F.3d at 1272; accord Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006). The Plaintiff has made a *prima facie* case that the Subsidiary Defendants are the agents for APS to conduct its BPO business.

Specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant only for claims arising out of that defendant's contacts with the forum state. Railcar, 42 F. Supp. 2d at 1371-72. According to the United States Supreme Court's interpretation of the Due Process Clause in International Shoe Company v. Washington, 326 U.S. 310, 320 (1945), and its progeny, a court can exercise specific jurisdiction over a non-resident defendant only if the defendant has sufficient "minimum contacts" with the forum state and exercising jurisdiction would not offend "traditional notions of fair play and substantial justice." Id. at 316; accord Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76 (1985); World-Wide Volkswagen Corp.

v. Woodson, 444 U.S. 286, 291-92 (1980); Kulko v. Superior Court, 436 U.S. 84, 85 (1978); Hanson v. Denckla, 357 U.S. 235, 253 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 222 (1957). To fulfill the minimum contacts requirements, a plaintiff must demonstrate the presence of three factors based entirely on the non-resident defendant's conduct. See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000) ("[I]t is important to remember that the conduct at issue is that of the defendants. No plaintiff can establish jurisdiction over a defendant through his own actions."). First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 258 (11th Cir. 1996). The cause of action–the violation of CUTA–arises out of APS' contacts with Georgia: CAM pleads that APS transferred CAM's Trade Secret to its subsidiaries in Georgia, and that those subsidiaries have since exploited the Trade Secret while acting on APS' behalf by providing APS' BPO services. (Am. Compl. ¶¶ 27, 29.) Second, the contacts must show that the non-resident defendant purposefully availed itself to the forum state and invoked its protections and benefits. Robinson, 74 F.3d at 258. Third, the non-resident defendant's contacts must show that it reasonably anticipated being haled into court in the forum state. Id. If APS conducted its BPO services through its Georgia subsidiaries, the second and third requirements have been met.

Fair play and substantial justice also support jurisdiction in Georgia. For the purposes of this Motion, APS' subsidiaries have an office in Georgia and APS retains counsel in Georgia. Furthermore, "modern methods of transportation and communication have significantly ameliorated" the burden of litigating in a foreign forum. Sculptchair v. Century Arts, Ltd., 94 F.3d 623, 632 (11th Cir. 1996).

C.  Service of Process

Under Rule 4, the Plaintiff can serve APS by following Georgia state law for serving a summons. Fed R. Civ. P. 4(e)(1), 4(h)(1)(A). Georgia state law permits a party to serve a "foreign corporation authorized to transact business in [Georgia]...by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to the chief executive officer...at its principal office shown in the later of its application for a certificate of authority or its most recent annual registration." O.C.G.A. §§ 14-2-1510(a)-(b). The plaintiff "shall also serve a copy of the process upon the Secretary of State." Id. APS has not applied for a certificate of authority and has not performed an annual registration in Georgia. CAM mailed a copy of the summons and complaint addressed to APS' CEO via registered mail with return receipt requested to 2002 Summit Boulevard, Suite 600, Atlanta, Georgia 30319. The parties dispute whether APS is a "foreign corporation" as defined by O.C.G.A. § 14-2-140(13), whether a corporation's failure to apply for a certificate of authority or

perform an annual registration in Georgia means that it cannot be served in Georgia pursuant to O.C.G.A. § 14-2-1510(b), and whether APS transacts business in Georgia as mandated by O.C.G.A. § 14-2-1510(b).

First, APS is a "foreign corporation" as it is "a corporation for profit incorporated under a law other than the law of this state." O.C.G.A. § 14-2-140(13). Corporations incorporated in foreign countries qualify under this definition. See, e.g., Imex Int'l, Inc. v. Wires Eng'g, 261 Ga. App. 329, 336 (2003) (characterizing Italian corporation Wires Engineering as a "foreign corporation"); Noro-North Plaza Holdings, N.V. v. Rare Coins of Ga., Inc., 196 Ga. App. 443, 445-46 (1990) (corporation organized under Netherlands law was properly served pursuant to predecessor statute). Second, O.C.G.A. § 14-2-1510(b) does apply when a foreign corporation has failed to obtain a certificate of authority, provided that the corporation does in fact transact business and should have obtained a certificate. Howard v. Technosystems Consol. Corp., 244 Ga. App. 767, 769 (2000) (citing Spiegel, Inc. v. Odum, 153 Ga. App. 380, 382 (1980)); see also Tomlin v. White Dairy Ice Cream Co., Inc., 13 F. Supp. 2d 1354 (S.D. Ga. 1997). Finally, the Plaintiff has presented sufficient evidence to raise a reasonable inference that APS transacts business in Georgia through its subsidiaries, and the Court must resolve this conflict in the Plaintiff's favor on this Motion to Dismiss. The Plaintiff served APS at 2002 Summit

Boulevard, Suite 600, Atlanta, Georgia 30319. APS' Georgia subsidiaries maintain their principal office at this location. For the purposes of this Motion to Dismiss, service was proper.

### D. Jurisdictional Discovery

The Court grants the Plaintiff's Motion to Permit Jurisdictional Discovery for the limited purpose of ascertaining whether APS' subsidiaries are "merely...agent[s] through which [APS] conducts [its BPO] business." Meier, 288 F.3d at 1272. The Court denies APS' Motion to Dismiss because CAM has presented a "reasonable inference" that APS conducts its BPO business through its subsidiaries. However, the Court may revisit the question of personal jurisdiction and service of process in the future, at which time CAM must prove by a preponderance of the evidence that APS is subject to personal jurisdiction and that service of process was proper.

## IV. Conclusion

For the reasons set forth above, the Court DENIES the Defendant APS' Motion to Dismiss [Doc. 20], GRANTS the Plaintiff's Motion to Permit Jurisdictional Recovery [Doc. 31], and DENIES the Plaintiff's Motion to Strike [Doc. 35].

SO ORDERED, this 6 day of January, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge