IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARTEL ASSET MANAGEMENT,
INC., a Colorado corporation,

    Plaintiff,

      v.

ALTISOURCE PORTFOLIO
SOLUTIONS, S. A. a corporation
chartered under the laws of the Grand
Duchy of Luxembourg, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2612-TWT

## OPINION AND ORDER

This Order resolves the Altisource Defendants' second motion to dismiss for lack of personal jurisdiction or lack of proper service. The Court concludes that it cannot exercise personal jurisdiction over the remaining Defendants, two Luxembourg corporations with minimal contacts with the State of Georgia. The Defendants' Motions to Dismiss [Docs. 67 & 82] are granted.

## I. Background

This suit concerns a trade secret allegedly stolen from the Plaintiff about thirteen years ago. The Plaintiff, Cartel Asset Management, Inc., developed the trade secret – a confidential list of experienced, responsive and competent realtors who

produce high-quality broker price opinions at acceptable prices (the "Trade Secret"). (Sec. Am. Compl. ¶¶ 10-11).  In 2000, Ocwen Federal Bank, a large customer of Cartel Asset Management, began to secretly copy the names and contact information of the realtors who produced the broker price opinions that it purchased from Cartel Asset Management.  (Id. ¶¶ 12-14).  Ocwen Federal then embedded the stolen information into its own incomplete database of broker price opinion providers.  (Id. ¶ 14).  As a result, Ocwen Federal had realtors in its broker price opinion database (the "Database") that were identified as a direct result of the theft of the Trade Secret, and Ocwen Federal was further able to find additional broker price opinion providers for the Database via referrals from these realtors.  (Id. at ¶¶ 14-15).

Cartel Asset Management sued Ocwen Federal and its affiliates for theft of the Trade Secret under the Colorado Uniform Trade Secrets Act in the United States District Court for the District of Colorado.  (Sec. Am. Compl. ¶ 31).  In 2004, a jury awarded Cartel Asset Management compensatory and punitive damages.  (Id. ¶ 32). While the judgment was on appeal, Ocwen Financial Corporation dissolved Ocwen Federal and transferred the Database to its wholly-owned subsidiary, Ocwen Loan Servicing, LLC.  (Id. ¶¶ 16-17).  Ocwen Loan Servicing continued to use and profit from Cartel Asset Management's Trade Secret and was added as a defendant in the Colorado proceedings after the Tenth Circuit remanded the suit for a new trial on

damages. (Id. ¶¶ 33-34).  In September 2010, a jury returned a verdict in Cartel Asset Management's favor for more than $12.72 million in compensatory and punitive damages based on the theft of the Trade Secret.  The verdict assessed damages to the use of the Trade Secret from the date it was stolen until August 10, 2009.  (Id. ¶¶ 34, 36).

In August 2009, Ocwen Financial Corporation spun off Altisource Portfolio Solutions, S.A. which had previously been a wholly owned subsidiary, and transferred its broker price opinion business and the Database to it.  (Sec. Am. Compl. ¶ 18).  As a result of the spin off, Cartel Asset Management alleges that Altisource Portfolio Solutions acquired Ocwen Financial Corporation's mortgage service business either directly or through its Luxembourg subsidiary, Altisource Solutions S.á.r.l.  Cartel Asset Management further alleges that Altisource S.á.r.l. acquired the broker price opinion Database containing the Trade Secret and the list of brokers obtained via the Trade Secret.  (Id. at ¶ 25).  Cartel Asset Management contends that Altisource S.á.r.l. has provided broker price opinions and other mortgage-related services for the entire Altisource Portfolio Solutions family of companies, using the Trade Secret, since the spin off.  (Id. at ¶ 26).  Cartel Asset Management further contends that Altisource S.á.r.l. "orders, acquires, purchases, and resells the Broker price opinions at the direction and control of its parent, Altisource Portfolio Solutions."  (Id.)  Altisource

Portfolio Solutions is a corporation chartered under the laws of the Grand Duchy of Luxembourg and maintains its principal place of business within Luxembourg. (Sec. Am. Compl. ¶ 2). Altisource S.á.r.l. is a wholly-owned subsidiary of Altisource Portfolio Solutions, and is also organized under the laws of Luxembourg. (Id. at ¶ 3).

Cartel Asset Management filed its complaint in this Court on August 8, 2011, asserting that Altisource Portfolio Solutions and its American subsidiaries misappropriated its Trade Secret. [Doc. 1]. Cartel Asset Management amended the Complaint on September 14, 2011. [Doc. 16]. Altisource Portfolio Solutions and its subsidiaries filed motions to dismiss. [Docs. 20 & 21]. On December 1, 2011, the Court denied the Defendants' motion to dismiss for failure to state a claim. On January 6, 2012, the Court denied Defendant Altisource Portfolio Solutions's motion to dismiss for lack of personal jurisdiction and improper service of process, and granted the Plaintiff's motion for jurisdictional discovery. [Docs. 37 & 46]. On August 14, 2012, Cartel Asset Management filed a second amended complaint against Altisource Portfolio Solutions, dropping all Defendants except for Altisource Portfolio Solutions and adding Altisource S.á.r.l. [Doc. 66]. Altisource Portfolio Solutions moved to dismiss the second amended complaint for lack of personal jurisdiction and for improper service of process on August 31, 2012. [Doc. 67]. On April 16, 2013,

Altisource S.á.r.l. also filed a motion to dismiss for lack of personal jurisdiction. [Doc. 82].  On June 7, 2013, Cartel Asset Management moved for leave to file a supplemental brief in opposition to the Defendants' motions to dismiss. [Doc. 89].

In general, Altisource Portfolio Solutions and Altisource S.á.r.l. argue that they are not subject to personal jurisdiction in Georgia because they are Luxembourg corporations that do not transact business in the United States, do not own or lease property in the United States, have never paid taxes in the United States, and have committed no acts with regard to the Plaintiff in the United States.  Altisource Portfolio Solutions further contends that the Plaintiff does not allege any direct facts supporting personal jurisdiction over Altisource Portfolio Solutions and only relies on indirect allegations with respect to Altisource S.á.r.l.

## II.  Motion to Dismiss Standards

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  In the Eleventh Circuit, a party presents

enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). Therefore, a plaintiff need not conclusively prove the facts necessary for the assertion of personal jurisdiction. Rather, it must present enough evidence to create a jury question. A court must construe the allegations in the complaint as true so long as the defendant does not dispute the facts. Morris, 843 F.2d at 492. If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, however, courts should construe all reasonable inferences in favor of the plaintiff. Madara, 916 F.2d at 1514.

B.   Motion to Dismiss for Failure to Effect Service of Process

Once a suit is filed in federal court, the defendants in the case must be served with process in accordance with Fed. R. Civ. P. 4. If service of process is not made upon a defendant within 120 days after the filing of a complaint, the court may dismiss the complaint without prejudice or direct that service be effected within a specified time. Fed. R. Civ. P. 4 (m). If the plaintiff shows good cause for the failure, the Court must extend the time for service for an appropriate period. Id.

III.  Discussion

A.   Altisource S.á.r.l.'s Motion to Dismiss for Lack of Personal Jurisdiction

The Court concludes that the Plaintiff has not established personal jurisdiction over Defendant Altisource S.á.r.l.  The Plaintiff's assertion of jurisdiction is based on three sets of facts.  First, the Plaintiff contends that Altisource S.á.r.l. operates the REALTrans Portal – an internet service that facilitates the production of broker price opinions – in Georgia because use of the Portal required submission to Georgia law and Georgia courts, and because the Portal involves performing broker price opinions in Georgia.  Second, the Plaintiff contends that Altisource S.á.r.l. conducts a large amount of business with Ocwen Financial Corporation, a company that recently moved to Georgia.  Third, the Plaintiff contends that Altisource S.á.r.l. itself holds property in Georgia and conducts business from that property.  These allegations alone are insufficient to establish personal jurisdiction in light of the sworn testimony produced by the Defendants that they are not true.

First, the Defendants have shown that the REALTrans Portal does not involve the Defendant performing broker price opinions in Georgia and has no connection to Georgia.  This business is conducted from Luxembourg and India.  According to the Defendants, Altisource S.á.r.l. does not perform broker price opinions, it only provides broker price opinions performed by third-party vendors.  Thus, third-party vendors who provide broker price opinions sign up with Altisource S.á.r.l. to use its REALTrans software, which in turn provides the broker price opinions performed by

the third parties to customers.  Typically, when a customer requests a broker price opinion, the REALTrans software will automatically select a third-party vendor who would then have the opportunity to review and accept the broker price opinion order, and provide it to the customer.  (<u>See</u> Shepro Decl. ¶¶ 19-26).  The Defendants contend that Altisource S.á.r.l.'s contacts with Georgia are nothing more than identifying third-party vendors who may be in Georgia.  Indeed, the Portal facilitates the production of broker price opinions throughout the United States, not just in Georgia.  The Plaintiff has not shown that the Portal is operated out of Georgia or has any connection to Georgia outside the choice of law and forum provisions, which were changed to mandate Luxembourg law in 2011. Further, the fact that the REALTrans Portal required users to submit to Georgia law and Georgia courts for a period of time is insufficient to confer personal jurisdiction over Altisource S.á.r.l.

Next, Altisource S.á.r.l.'s contacts with Georgia by virtue of its contacts with Ocwen Financial Corporation are insufficient to support specific jurisdiction because Ocwen Financial Corporation moved to Georgia unilaterally after this case was filed, and there is no indication that Ocwen Financial Corporation's move to Georgia affected the contracting parties' obligations in any way.  Indeed, the amendment to the service agreement extending the contract to 2020 and the loan agreement by which Altisource S.á.r.l. loaned Ocwen Financial Corporation over $70 million both list it

as a Florida corporation.  (<u>See</u> Pl.'s Resp. in Opp'n to Def. Altisource S.A.'s Mot. to Dismiss, Ex. 3; <u>Id.</u> Ex. 7).  Additionally, the service agreement itself is governed by New York law.  (<u>See id.</u> Ex. 1, at 12).

In <u>McDonald v. Ricci</u>, No. 1:07-cv-804-TWT, 2007 WL 2001732 (N.D. Ga. Jul. 5, 2007), the court concluded that a contracting party's unilateral move to Georgia was insufficient to establish personal jurisdiction over the other contracting party in Georgia.  The lawsuit stemmed from a sales contract whereby the plaintiff sold his interest in a limited liability company equally owned by the plaintiff and the defendants to the defendants, a husband and wife.  At some point, the defendants refused to continue making installments under the sales contract arguing that the plaintiff had, prior to the sale, used the LLC to purchase property in Georgia and then divert the profits from the sale of that property to himself.  The plaintiff, who had moved to Georgia around the time the parties entered into the sales contract, sought declaratory relief in Georgia and the defendants argued they were not subject to personal jurisdiction in Georgia.  The court agreed with the defendants.  The court noted that "[t]wo Florida residents purchased interests in a Florida corporation from a former Florida resident, and signed a contract stating that Florida law would control the outcome of any legal disputes," a fact which deserves much weight in the "purposeful availment" analysis.  <u>Id.</u> at *3.  The court further noted that, because the

plaintiff moved to Georgia around the time the sales contract was completed, the defendants had not "reached out to Georgia in order to sell goods to a longtime state resident." Id.  The court noted that even though the sales contract listed the plaintiff as having a Georgia residence, and even though the contract required the defendants to pay the plaintiff wherever he was located, "[t]he act of sending payments, or even correspondence, is not enough for the Defendants to reasonably anticipate being sued in Georgia." Id.  Noting that the "existence of the contract… does not create contacts with the forum," the court concluded the plaintiff had not established specific personal jurisdiction over the defendants. Id. (citing Burger King v. Rudzewicz, 471 U.S. 462, 478-79 (1985)).

Here, Altisource S.á.r.l.'s contacts with Georgia through its contract with Ocwen Financial Corporation are similarly attenuated.  Like the contract in McDonald, the contract here does not specify the application of Georgia law, instead it calls for New York law.  In McDonald, the contract noted that the plaintiff was a Georgia resident.  Here, however, the initial contract listed Ocwen Financial Corporation as a Florida corporation, and, although Altisource S.á.r.l. concedes that Ocwen Financial Corporation moved to Georgia, both the amendment extending the contract to 2020 and the loan agreement continued to list Ocwen Financial Corporation as a Florida corporation.  Importantly, in both cases, the contracting party

unilaterally moved to Georgia while the contract was in force.  Simply because Ocwen Financial Corporation moved to Georgia does not subject Altisource S.á.r.l. to personal jurisdiction in Georgia.  See McDonald, 2007 WL 2001732, at *3 (noting that personal jurisdiction does not automatically extend to whichever state the plaintiff moves to while the contract is in force).  Because the initial contract between Altisource S.á.r.l. and Ocwen Financial Corporation listed Ocwen Financial Corporation as a Florida company, because the contract calls for the application of New York law, and because, even after Ocwen Financial Corporation relocated to Georgia, it was still listed as a Florida company in later agreements, the contracts between Altisource S.á.r.l. and Ocwen Financial Corporation are insufficient to create specific personal jurisdiction over the Defendants in Georgia.

Finally, the Plaintiff's assertion that Altisource S.á.r.l. holds property in Georgia is belied by the Defendants' evidence.  According to the declaration of William Shepro, a manager on Altisource S.á.r.l.'s Board of Managers, Altisource S.á.r.l. does not have and has never had an office in Georgia or in the United States. Shepro further declares that Altisource S.á.r.l. has never held any property in Georgia or the United States, has never paid any taxes in Georgia or the United States, has never committed any acts associated with the Plaintiff in Georgia or the United States, has no employees in Georgia, and has never been a Georgia corporation or sought a

certificate to transact business in Georgia.  (Shepro Decl. in Supp. of Altisource S.á.r.l.'s Mot. to Dismiss ¶¶ 9-17).

Even assuming that with the above allegations the Plaintiff could establish that Altisource S.á.r.l.'s contacts with Georgia satisfied the Georgia long-arm statute, O.C.G.A. § 9-10-91, Altisource S.á.r.l. does not have sufficient contacts with Georgia to satisfy due process.  According to the United States Supreme Court's interpretation of the Due Process Clause in International Shoe Company v. Washington, 326 U.S. 310, 320 (1945), and its progeny, a court can exercise specific jurisdiction over a non-resident defendant only if the defendant has sufficient "minimum contacts" with the forum state and exercising jurisdiction would not offend "traditional notions of fair play and substantial justice."  Id. at 316; accord Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980); Kulko v. Superior Court, 436 U.S. 84, 85 (1978); Hanson v. Denckla, 357 U.S. 235, 253 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 222 (1957). To fulfill the minimum contacts requirements, a plaintiff must demonstrate the presence of three factors based entirely on the non-resident defendant's conduct.  See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000) ("[I]t is important to remember that the conduct at issue is that of the

defendants.  No plaintiff can establish jurisdiction over a defendant through his own actions.").  First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state.  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 258 (11th Cir. 1996).  Second, the contacts must show that the non-resident defendant purposefully availed itself to the forum state and invoked its protections and benefits.  Robinson, 74 F.3d at 258.  Third, the non-resident defendant's contacts must show that it reasonably anticipated being haled into court in the forum state.  Id.

Here, as discussed above, the Plaintiff has not established that Altisource S.á.r.l. has any contacts with Georgia aside from its association with Ocwen Financial Corporation after it moved to Georgia and its requirement that users of the REALTrans Portal submit to Georgia law and Georgia courts.  Even assuming these contacts are sufficiently related to this litigation to support specific jurisdiction, the contacts do not establish that Altisource S.á.r.l. unilaterally made contact with Georgia.  As noted, Ocwen Financial Corporation moved to Georgia after Altisource S.á.r.l. signed the service agreement with Ocwen Financial Corporation.  There is no indication that Ocwen Financial Corporation's move to Georgia changed any obligation under the service agreement.  Further, the renewed service agreement still identifies Ocwen Financial Corporation as a Florida corporation and mandates the

operation of New York law.  Nothing in Altisource S.á.r.l.'s relationship with Ocwen Financial Corporation suggests that Altisource S.á.r.l. purposefully availed itself of Georgia' protections and benefits.  Likewise, Altisource S.á.r.l.'s use of Georgia law and Georgia courts for litigation relating to the REALTrans Portal is not a sufficient contact with Georgia to warrant personal jurisdiction.  As noted, the REALTrans Portal now requires the use of Luxembourg law.  Further, the Defendants have shown that the REALTrans Portal is not used to produce broker price opinions in Georgia, but rather to connect customers and realtors throughout the United States.  The limited connection that Altisource S.á.r.l. has with Georgia through the REALTrans Portal is not enough to indicate that it could anticipate being haled into court in Georgia.  Accordingly, Altisource S.á.r.l. does not have sufficient minimum contacts with Georgia to warrant personal jurisdiction.

Furthermore, notions of fair play and substantial justice counsel against asserting jurisdiction over Altisource S.á.r.l. in Georgia.  Altisource S.á.r.l. is a Luxembourg corporation that has never had an office in Georgia, has never had property in Georgia, has never paid taxes in Georgia, has never registered to operate in Georgia, and has never had employees in Georgia.  These facts suggest that haling Altisource S.á.r.l. into court in Georgia would impose a substantial burden.  Accordingly, the Plaintiff has not established that this Court can exercise personal

jurisdiction over Altisource S.á.r.l., and Altisource S.á.r.l.'s motion to dismiss should be granted.

      B.     <u>Altisource S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction</u>

The Plaintiff seeks to establish personal jurisdiction over Altisource Portfolio Solutions in Georgia through its subsidiary, Altisource S.á.r.l., and by alleging that Altisource Portfolio Solutions itself holds property in Georgia.  While a foreign corporation is not subject to jurisdiction in Georgia merely because a subsidiary is doing business in Georgia, <u>Consolidated Development Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1293 (2000), "if the subsidiary is merely an agent through which the parent company conducts business in [Georgia]...then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in [Georgia] through the subsidiary for purposes of asserting personal jurisdiction." <u>Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.</u>, 288 F.3d 1264, 1272 (11th Cir. 2002); <u>accord</u> <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1361 (11th Cir. 2006).  Here, however, as discussed above, the Plaintiff has not established that Altisource S.á.r.l. transacts business in Georgia.  Even assuming the Plaintiff had shown Altisource S.á.r.l. was transacting business in Georgia, there is no indication that Altisource S.á.r.l. was merely an agent for Altisource Portfolio Solutions.  The Plaintiff has now abandoned its claim that Altisource Portfolio

Solutions' subsidiaries that do operate in the United States are merely agents through which it transacts business in Georgia.

Additionally, contrary to the Plaintiff's allegations, the Defendants have shown that Altisource Portfolio Solutions does not hold property in Georgia or transact business in Georgia. The Defendants provide evidence indicating that Altisource Portfolio Solutions is a Luxembourg corporation whose managers and officers reside in Luxembourg. Altisource Portfolio Solutions has never held property in Georgia, has never had an office in Georgia, does not accept mail in Georgia, has never done business in Georgia, has never had employees in Georgia, has never paid taxes in Georgia, and has committed no acts or omissions with respect to the Plaintiff in Georgia. Indeed, according to its CEO, Altisource Portfolio Solutions has never even conducted business or held property in the United States generally.[1]   (See Shepro

---

[1] The Plaintiff filed a Motion for Leave to File a Supplemental Brief in Opposition to the Defendants' Motions to Dismiss [Doc. 89]. Through the motion, the Plaintiffs offer an email sent from an "Altisource.com" email address that lists an office address in Atlanta, Georgia. Altisource Portfolio Solutions argues that the email the Plaintiff provides is unauthenticated and was not sent by Altisource Portfolio Solutions or Altisource S.á.r.l., but rather by an employee of Ocwen Financial Services located in Uruguay. Whatever the source of the email, the email itself does not override the Defendants' evidence that neither Altisource Portfolio Solutions nor Altisource S.á.r.l. hold property in Georgia or have an office in Georgia. The Plaintiff's motion for leave to file supplemental evidence should be granted, but the email itself is not dispositive.

Decl. in Supp. of Def. Altisource Portfolio Solutions, S.A.'s Motion to Dismiss ¶¶ 4-19).

Even assuming the Plaintiff had shown that Altisource Portfolio Solutions' conduct in Georgia satisfies the Georgia long-arm statute, O.C.G.A. § 9-10-91, the Plaintiff has not shown that exercising personal jurisdiction over Altisource Portfolio Solutions would satisfy due process.  As noted, to fulfill the minimum contacts requirements to support specific personal jurisdiction, a plaintiff must demonstrate the presence of three factors based entirely on the non-resident defendant's conduct.  See Ruiz de Molina, 207 F.3d at 1356.  First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state.  Robinson, 74 F.3d at 258.  Second, the contacts must show that the non-resident defendant purposefully availed itself to the forum state and invoked its protections and benefits. Robinson, 74 F.3d at 258.  And third, the non-resident defendant's contacts must show that it reasonably anticipated being haled into court in the forum state.  Id.

Here, the Plaintiff has not shown that Altisource Portfolio Solutions has any contacts with Georgia relating to the theft of the Trade Secret.  Indeed, there is no indication that Altisource Portfolio Solutions has committed any acts or omissions in Georgia with any connection whatsoever to the Plaintiff.  Further, even if Altisource Portfolio Solutions had committed acts in Georgia in connection to the Plaintiff's

cause of action, there is no indication that Altisource Portfolio Solutions purposefully availed itself of Georgia's protections in benefits. The evidence shows that Altisource Portfolio Solutions has no connections with Georgia or with the United States generally. Even though Altisource Portfolio Solutions has subsidiaries operating in Georgia, there is no indication that the subsidiaries were merely agents of Altisource Portfolio Solutions through which Altisource Portfolio Solutions could be expected to be haled into court in Georgia. Overall, considering Altisource Portfolio Solutions' complete lack of contact with Georgia, Altisource Portfolio Solutions did not invoke Georgia's benefits and protections and could not have reasonably anticipated being haled into court in Georgia.

Finally, as with its subsidiary Altisource S.á.r.l., notions of fair play and substantial justice counsel against asserting personal jurisdiction over Altisource Portfolio Solutions in Georgia. Altisource Portfolio Solutions is a Luxembourg corporation with minimal if any contacts with the United States generally, let alone Georgia. Litigation in Georgia would therefore be a substantial hardship on Altisource Portfolio Solutions. Accordingly, the Plaintiff has not established that this Court can exercise personal jurisdiction over Altisource Portfolio Solutions, and Altisource Portfolio Solutions' motion to dismiss should therefore be granted.[1]

---

[1] Because the Court concludes that the Plaintiff cannot establish personal jurisdiction over the Defendants, the Court need not resolve Altisource Portfolio

IV.  <u>Conclusion</u>

For the reasons set forth above, Defendant Altisource Portfolio Solutions's motion to dismiss [Doc. 67] is GRANTED and Defendant Altisource S.á.r.l.'s motion to dismiss [Doc. 82] is GRANTED.  Cartel Asset Management's Motion for Leave to File a Supplemental Brief in Opposition to the Defendants' Motions to Dismiss [Doc. 89] is GRANTED.

SO ORDERED, this 29 day of August, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

Solutions' contention that it has not been properly served.